T.C. Summary Opinion 2018-9

UNITED STATES TAX COURT

JOSE FRANCO AND LINDA ANNE FRANCO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22469-16S.                    Filed March 6, 2018.

Jose Franco, pro se.

<u>Jason T. Scott</u> and <u>Michael Skeen</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $7,068 in petitioners' Federal income tax for 2013 (year in issue). Petitioners, husband and wife, resided in California at the time they filed their petition for redetermination with the Court.[2] The sole issue for decision is whether a loss of $42,882 that petitioners reported on Schedule E, Supplemental Income and Loss, is disallowed under the passive activity loss limitations prescribed in section 469.[3]

## Background[4]

### I. Mr. Franco's Background

Mr. Franco is a licensed architect, and he runs a small architectural business. During 2013 he spent 109 hours providing architectural services to the

---

[1](...continued)
Code, as amended and in effect for 2013, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2]Although Mrs. Franco did not appear at the trial of this case, she informed the Court that she was aware of the proceeding and that she understood Mr. Franco would prosecute the case on her behalf.

[3]Other adjustments are computational and depend solely on the disposition of the issue in dispute.

[4]The parties have stipulated some of the underlying facts.

trust department at Wells Fargo Bank and about 540 hours providing similar services to Axis Construction Consulting (including time that he spent traveling).

## II. Rental Real Estate Activities

### A. Rental Properties

During 2013 petitioners owned two rental properties in Burlingame, California. One of the properties, Edgehill Drive, was a "fourplex"--a single building containing four separate apartments. The other property, Bayswater Avenue, was a single-family home.

### B. Management of the Properties

Mr. Franco managed the rental properties during the year in issue. Because his tenants were not attentive to trash disposal matters, Mr. Franco made weekly trips to the properties to ensure that trash bins were set out for collection, cleaned if necessary, and returned to their storage locations. He also performed minor repairs at the properties, coordinated more substantial repairs with a handyman, communicated with the tenants and collected and deposited rent, maintained insurance policies, purchased materials for the properties as needed, paid bills, and kept books and records of his expenses for tax accounting purposes.

Two of the four tenants at Edgehill Drive moved out in 2013. As a result, Mr. Franco spent additional time coordinating with them as they vacated the

apartments, performed extra repair and maintenance work to ready the apartments for new tenants, placed advertisements listing the apartments for rent, and worked with new tenants as they signed leases and moved into the apartments.

Mr. Franco was late paying property taxes and insurance premiums on both rental properties during 2013. Consequently, he was obliged to spend time negotiating a property tax installment payment plan and had to work with his mortgage lender to eliminate redundant insurance coverage on the properties.

Mr. Franco produced an activity log listing the personal services that he performed in managing the rental properties during 2013 and the time that he spent providing those services. The activity log indicates that Mr. Franco devoted 765 and 372 hours to the management of Edgehill Drive and Bayswater Avenue, respectively.

Mr. Franco produced records of his email exchanges with his tenants and mortgage brokers (related to his attempts at refinancing the mortgages on the properties) and numerous receipts from home improvement stores and other vendors related to the management of and repairs undertaken at the rental properties.

III. <u>Petitioners' 2013 Tax Return and Respondent's Determination</u>

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2013. Mr. Franco reported gross receipts of $85,605 from his architectural business on Schedule C, Profit or Loss From Business, offset by various expenses, including $28,580 for contract labor. Petitioners also attached to their tax return a Schedule E, reporting gross rental income of $101,950 from the two properties, offset by expenses of $169,832, resulting in a net loss of $67,882 from the rental activity. Petitioners reported the loss on line 17 of their tax return in computing total income.

Respondent acknowledged in the notice of deficiency that petitioners are entitled to deduct $25,000 of the $67,882 loss in accordance with the exception prescribed in section 469(i).[5] Absent a further exception, however, respondent determined that the $42,882 balance of the loss deduction is disallowed under section 469.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of

---

[5]A taxpayer who actively participates in rental real estate activities may deduct up to $25,000 per year for related passive activity losses. <u>See</u> sec. 469(i)(1) and (2).

proving that the determination is incorrect.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[6]  Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976); <u>Meneguzzo v. Commissioner</u>, 43 T.C. 824, 831-832 (1965).

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212.  Section 469(a)(1), however, generally disallows for the taxable year any deduction for passive activity losses and credits. A passive activity loss is defined as the excess of the aggregate losses from all passive activities for a taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any activity that involves the conduct of a trade or business or the expenses of which are deductible

---

[6]Petitioners do not contend that the burden of proof should shift to respondent pursuant to sec. 7491(a), and there is no support in the record for doing so.  Therefore, the burden of proof remains on petitioners.  <u>See</u> Rule 142(a).

under section 212, in which the taxpayer does not materially participate. Sec. 469(c)(1), (6)(B).

A rental activity generally is treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4). The term "rental activity" generally is defined as any activity where payments are principally for the use of tangible property. Sec. 469(j)(8).

Section 469(c)(7) provides special rules for taxpayers engaging in real property businesses. Section 469(c)(7)(A) and (B) provides that rental activities of a qualifying taxpayer in a real property trade or business (i.e., a real estate professional) are not per se passive activities under subsection (c)(2) for a taxable year and, if the taxpayer materially participates in the rental real estate activities, these activities are treated as nonpassive activities. Sec. 1.469-9(e)(1), Income Tax Regs.[7]

The flush language of section 469(c)(7)(A) provides that a taxpayer may elect to treat all interests in rental real estate as one activity. Respondent does not

---

[7]A taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a regular, continuous, and substantial basis. Sec. 469(h)(1); see sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988) (identifying various tests to determine whether a taxpayer satisfies the material participation requirement). In determining whether a taxpayer materially participates, the participation of the taxpayer's spouse shall be taken into account. Sec. 469(h)(5).

contend that petitioners failed to elect to treat their two rental properties as one activity in accordance with the flush language of section 469(c)(7)(A). Accordingly, we deem that issue conceded. See Moss v. Commissioner, 135 T.C. 365, 369 (2010).

A taxpayer qualifies as a real estate professional under section 469(c)(7)(B) if (i) more than one-half of personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates and (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.[8]

"Personal services" means any work performed by an individual in connection with a trade or business. Sec. 1.469-9(b)(4), Income Tax Regs. The flush language of section 469(c)(7)(B) provides that, in the case of a joint return, the requirements set forth in subparagraph (B) are satisfied "if and only if either spouse separately satisfies such requirements."

---

[8]The term "real property trade or business" means any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business. See sec. 469(c)(7)(C). Petitioners do not contend that Mr. Franco's work as an architect constitutes a real property trade or business.

The evidence that a taxpayer may use to establish the number of hours that he or she participates in a real property trade or business is described in section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), as follows:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

We have held that the regulations do not allow a postevent "ballpark guesstimate". See Moss v. Commissioner, 135 T.C. at 369 (and cases cited threat).

Although Mr. Franco worked about 650 hours providing personal services as an architect in 2013, the record shows that he also spent more than 750 hours providing personal services in connection with the management of the rental properties. Mr. Franco offered credible testimony describing the time and effort that he devoted to both activities during the year in issue. His testimony was largely corroborated with objective evidence including a rental activity log, receipts for various rental-related expenditures, emails, and other business

records.[9]  Considering all the facts and circumstances, Mr. Franco qualified as a real estate professional in 2013 and his rental real estate activities were regular, continuous, and substantial within the meaning of section 469(h)(1).  It follows that the loss deduction in dispute is not disallowed under section 469.

To reflect the foregoing,

Decision will be entered

for petitioners.

---

[9]Respondent's concern that Mr. Franco may have exaggerated the number of hours recorded in his rental real estate activity log is not wholly unjustified.  For example, the Court disregarded the hours that Mr. Franco listed for vehicle maintenance.  Nevertheless, the record as a whole shows that Mr. Franco spent at least 750 hours managing the rental properties in 2013.